IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

THOMAS C KERN,

      Plaintiff,

v.                                CASE NO. 1:17-cv-185-MW-GRJ

NANCY A BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff appeals to this Court from a final decision of the

Commissioner of Social Security (the "Commissioner") terminating his

disability benefits due to medical improvement.  The Commissioner has

answered, and both parties have filed briefs outlining their respective

positions.  ECF Nos. 9, 12, 13.  For the reasons discussed below, the

undersigned recommends that the Commissioner's decision be

**AFFIRMED**.

## **I.  PROCEDURAL HISTORY**

Plaintiff was initially determined to be disabled beginning on February

18, 2008, due to affective, mood, and personality disorders.  R. 93, 96.  In

2014, the agency conducted a disability review which concluded with the

determination that Plaintiff was no longer disabled due to medical

improvement.  R. 94-99.  The cessation of benefits was affirmed on

reconsideration and Plaintiff requested a hearing before an ALJ.  R. 45-92,

106-19.  The ALJ issued an unfavorable decision and the Appeals Council

denied review.  R. 1-7, 24-38.  This appeal followed.  The sole issue

presented is whether substantial evidence supports the Commissioner's

decision that Plaintiff's condition was no longer disabling as of December

12, 2014.  ECF No. 12 at 19.

## II.  STANDARD OF REVIEW

A claimant bears the burden of providing evidence that he is disabled

within the meaning of the Social Security Act.[1]  In a termination of benefits

case, the issue is whether substantial evidence shows that Plaintiff's

impairments medically improved to the point that he is able to perform

substantial gainful activity.[2]  Medical improvement is defined as any

decrease in the medical severity of Plaintiff's impairments based on

changes in the symptoms, signs, and/or laboratory findings associated with

Plaintiff's impairments.[3]

---

[1] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001.)

[2] See 42 U.S.C. 423(f); 20 C.F.R. 404.1594(a).

[3] 20 C.F.R. 404.1594(b)(1), (C)(1); see also, 20 C.F.R. 404.1528.

The standard for medical improvement and the required sequential evaluation process are outlined in the regulations at 20 C.F.R. 404.1594(b)(5).[4] Generally, medical improvement relates to a claimant's ability to work if the claimant has had a decrease in the severity of his impairments and an increase in his RFC.

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[5] Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of

---

[4] The steps in the process are:

1.  Does the claimant have an impairment which meets or equals the severity of an impairment listed in Appendix 1?
2.  If not, has there been medical improvement as shown by a decrease in severity?  If so, see step 3, otherwise, go to step 4.
3.  If there has been medical improvement, is it related to the claimant's ability to work?
4. If there has not been medical improvement or if the medical improvement is not related to the ability to do work, do any exception(s) to the medical improvement standard apply?
5.  If there has been medical improvement related to the ability to work, or if one of the exceptions applies, does the claimant have a severe impairment or combination of impairments?
6.  If the claimant has a severe impairment, does the claimant have the RFC to perform his/her past relevant work?
7.  If not, does the claimant have the RFC and vocational factors to  perform other work?

[5] *See* 42 U.S.C. § 405(g) (2000).

a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[6]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[7] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[8]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[9]

---

[6] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[7] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[8] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[9] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

## III.  SUMMARY OF THE RECORD

### *A. Findings of the ALJ*

The ALJ determined that the "comparison point decision" (CPD) was the most recent favorable medical decision finding that Plaintiff was disabled dated June 22, 2009.  According to the ALJ, at that time it was determined that Plaintiff had the impairments of: a history of an affective mood disorder and personality disorder, degenerative disc disease of the cervical spine status post fusion at C3-C5, and mild degenerative disc disease of the lumbar spine.  At that time, Plaintiff was found to have the RFC to perform the exertional requirements of medium work.  However, his mental impairments restricted him to simple and routine tasks and precluded him from relating or accepting directions from supervisors or remaining socially appropriate with co-workers of the public.  R. 26; *see* R. 93, 96.  The CPD reflects that Plaintiff's primary diagnosis was "affective/mood disorders", and his secondary diagnosis was "personality disorders".  R. 93.  Through December 12, 2014, the date Plaintiff's disability ended, Plaintiff did not engage in any substantial gainful activity. Plaintiff did not develop any additional impairments after the CPD through December 12, 2014.  R. 26.

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the listings.  The ALJ determined that the medical evidence supported a finding that there was a decrease in severity of Plaintiff's impairments compared with his condition at the CPD such that medical improvement occurred as of December 12, 2014.  The ALJ determined that Plaintiff has the RFC to perform a reduced range of light, unskilled work.  The limitation to unskilled work is due to Plaintiff's complaints of chronic pain, and not due to a discrete or severe mental impairment.  R. 27.  In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements regarding his subjective symptoms were not consistent with the objective medical and other evidence in the record.  R. 28.  In determining Plaintiff's RFC, the ALJ also relied on the testimony of a medical expert (ME), Dr. John Kwock, an orthopedist.  R. 33.

Relying on the testimony of a VE, the ALJ found that as of December 12, 2014, Plaintiff was unable to perform his past relevant work as an operating engineer, a job classified as medium and skilled.  The VE testified that there were jobs that a person of Plaintiff's age, education, work experience, and RFC could perform, such as cashier II, marker, document preparer, and addresser.  The ALJ therefore found that Plaintiff's disability ended as of December 12, 2014.  R. 37.

## B. Medical Evidence

The ALJ discussed the following medical evidence in finding that Plaintiff's condition had improved since the CPD.  In June 2009, Pastora Roldan, Ph.D., completed a psychiatric review technique (PRT) form and performed an RFC assessment relating to Plaintiff's mental impairments. R. 488099, 521-23.  Dr. Roldan concluded that Plaintiff had affective disorder, personality disorders, and substance addiction disorders.  R. 488, 496.  Plaintiff also had depressive disorder NOS and narcissistic traits.  R. 491, 495.  Dr. Roldan determined that Plaintiff had marked limitations in his ability to:  (1) work in coordination or proximity to others without being distracted by them; (2) interact appropriately with the general public; (3) accept instructions and respond appropriately to criticism from supervisors; and (4) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  R. 521-23. This RFC determination restricted Plaintiff to simple and routine tasks and recognized that he could not accept instructions from supervisors or remain socially appropriate with coworkers or the general public.  *Id.*

Conceerning Plaintiff's physical RFC at the CPD, in March 2009 Dr. Mayenne Karelitz performed an RFC assessment concluding that Plaintiff

could perform a broad range of medium work with little physical restriction.
R. 506-13.

Plaintiff's records reflect that he has not received treatment for his
mental impairments since February 2008, apart from receiving
prescriptions for Valium from his family practitioner and pain management
treatment provider.  *See* R. 528-30, 537, 587, 591, 592.  There are no
records showing that Plaintiff attended counseling, received specialized
treatment from a mental health provider, or had any hospitalizations related
to his mental impairments.

Plaintiff received treatment from Tai Pham, P.A., at the Southern
Nevada Pain Center in 2013 and 2014.  Examination notes reflect that
Plaintiff was alert, oriented, had clear speech and thought content, and no
suicidal ideation or delusions.  R. 536, 540, 544, 548, 552, 556, 560, 564,
567, 571, 575, 579, 583, 586, 590.  In the same vein, from May to July
2014, Plaintiff's family practitioner, Alpa Desai, D.O., noted that Plaintiff
consistently had a flat or normal affect, calm mood, and was negative for
suicidal ideation or dysphoric mood.  R. 529, 530, 532.

In December 2014, Janet Humphreys, Ph.D., performed a
consultative psychological evaluation of Plaintiff.  R. 78-79, 601-04.
Plaintiff stated that he was first treated for depression and anxiety following

back surgeries in 2006.  He stated that he had discontinued treatment a few months previously when he was assigned to a new psychiatrist.  On examination, his mood was anxious and irritable; affect was congruent. Plaintiff admitted to passive homicidal ideation, but strongly denied intent and plan.  He denied suicidal ideation, intent, or plan. Plaintiff's thought processes were logical and goal oriented with normal content, he had good judgment and insight, his concentration and memory were intact, and he was oriented to person, place, and time.  602-03. Dr. Humphreys noted that Plaintiff "reported symptoms consistent with unspecified bipolar disorder and somatic symptom disorder."  Dr. Humphreys concluded that Plaintiff seemed capable of managing his own funds.  R. 603.

In December 2014, state agency consulting psychologist Robert Hodes, Ph.D., assessed Plaintiff's mental RFC and determined that Plaintiff had no more than moderate limitations in maintaining social functioning and no more than mild limitations in activities of daily living and maintaining concentration, persistence, and pace.  R. 605-07, 619.  Dr. Hodes concluded that Plaintiff could sustain concentration and pace for the performance of simple and routine tasks, perform satisfactorily with limited social contacts and responsibilities, and respond appropriately to changes in a routine work setting.  R. 607.

The record includes correspondence from Adil Mohammed, M.D., of Harmony United Psychiatric Care.  R. 830.  The note states that Plaintiff has been under care since August 4, 2016, and "is currently being treated for Major Depressive Disorder and generalized anxiety disorder."  *Id*. There are no progress notes or examination findings.

With respect to Plaintiff's current physical impairments, throughout 2014 Plaintiff's examinations reflected normal coordination and balance, as well as 5/5 muscle strength.  R. 532, 536, 540, 544, 548, 552.  Although Plaintiff occasionally displayed an antalgic gait and used assistive devices, there are no records reflecting that any treatment provider prescribed an assistive device.  Plaintiff's treatment was conservative, consisting of prescription medication.  R. 535, 539, 543, 547, 551.

In January 2015, Plaintiff began treatment with Brent Stewart, M.D., at Advanced Pain Management.  R. 702.  According to Dr. Stewart's notes, Plaintiff continued to obtain pain relief through prescribed narcotics.  R. 687, 692, 789, 795.  Plaintiff had somewhat limited range of motion in his lumbar spine but had full muscle strength and generally normal sensation in his extremities.  R. 689-90, 694-95, 699-700, 704-05, 766-67, 792, 798, 818.  Plaintiff exhibited a normal range of motion in his cervical spine.  R. 689-90, 699-700, 704-05, 766-67, 791, 797, 818. He also displayed normal

balance and coordination, with an occasional antalgic gait.  R. 690, 695, 700, 704-05, 766-67, 792, 798.  Dr. Stewart's progress notes through June and July 2016 continued to show conservative treatment with prescription narcotics and consistent physical examination findings of full muscle strength, normal balance, and coordination.  R. 804, 806-08, 812-14, 823-25.

In May 2016, Dr. Stewart referred Plaintiff to John Stevenson, M.D., of the Orthopaedic Institute.  R. 836. Dr. Stevenson reported that Plaintiff obtained relief from chronic low back pain through rest and prescription medication.  *Id.* Dr. Stevenson's examination reflects that Plaintiff had full muscle strength and normal reflexes in all extremities, with intact sensory responses and negative bilateral straight leg raise test.  R. 836-37. At the time of Dr. Stevenson's examination, Plaintiff was using a wheelchair and Dr. Stevenson notes that he "was unable to show me his gait".  R. 837.  Dr. Stevenson assessed Plaintiff as having "chronic pain" and suggested that Plaintiff participate in a spinal cord stimulator trial.  He gave Plaintiff a 20-pound lifting, pushing, and pulling restriction.  *Id.* In September 2016, Dr. Stevenson opined that Plaintiff is "totally permanently disabled," unable to lift, push, or pull over 10 pounds, unable to stand or walk for long periods of time, and unable to perform any overhead work.  R. 831.

May 2016 x-rays showed a solid fusion at C3-C4, C4-C5, and L5-S1. R. 837. An MRI of the cervical spine from May 2016 showed status post-fusion at C3-C4 and C4-C5 levels, with patent neural foramina, moderate narrowing at the C5-C6 level, and mild narrowing at the C6-C7 level. R. 832-33. An MRI of the lumbar spine revealed mild to moderate narrowing of the bilateral foramina at the L2 through L5 levels, fusion at the L5-S1 level with patent neural foramina, and thoracolumbar dextroscoliosis (spinal curve to the right). R. 834-35.

State agency medical consultants Bettye Stanley, D.O., and Walter Harris, M.D., and the ME, Dr. Kwock, all opined that Plaintiff could perform a modified range of light work. R. 56-57, 623-29, 710-16.

### C. Hearing Testimony

Plaintiff's hearing was held on August 16, 2016. The ME, Dr. John Francis Kwock, testified that he is a retired board-certified orthopedic surgeon. Dr. Kwock testified that the objective evidence from 2008 showed that Plaintiff had degenerative changes of the cervical, thoracic, and lumbar spine, but the changes were described as "mild", "mild to moderate", and "slightly mild". R. 52. At the time of the hearing, there was no documentation of the current objective condition of Plaintiff's spine. Dr. Kwock reviewed Plaintiff's examination findings from August 2013 through

May of 2016.  He testified that those physical findings reflected "a fairly normal neurological examination of both the upper and lower extremities. There were no findings [confirming] the presence of any residual neurological involvement from the cervical spine, thoracic spine, or the lumbar spine".  R. 52-53.  Dr. Kwock noted that Plaintiff underwent an operative procedure on the cervical spine in 2008, but "currently, he does not manifest . . . any findings that would be suggestive of any severe impairment[.]" *Id.* at 53.  Dr. Kwock opined that unless something had changed markedly with Plaintiff's condition that was documented with objective studies, the record evidences that his condition had remained stable from 2008 until the time of the hearing.  *Id.* at 55.  Plaintiff would not currently meet or equal any listing for a musculoskeletal impairment.  *Id.* Based on the evidence reviewed by Dr. Kwock, he concluded that Plaintiff retained the RFC for light work, with some postural and environmental limitations.  *Id.* at 56-57.

During cross-examination, Plaintiff's representative conceded that Plaintiff was not awarded disability benefits as a result of physical problems.  Rather, the original disability finding was based on Plaintiff's mental impairments.  R. 61.  Dr. Kwock acknowledged that Plaintiff's physical impairments could produce pain, but there was no objective

evidence to support pain at such a level that Plaintiff would miss at least three days per month of work.  *Id.* at 63.

Plaintiff testified that he was currently 45 years old, graduated from high school, and attended some community college.  Plaintiff has a driver's license but stopped driving four or five months before the hearing.  Plaintiff last worked in 2007, as a heavy equipment operator.  R. 67-68.

Plaintiff testified that he has not attempted to work since December 2014, and that he has been under continuous medical care.  Plaintiff began seeing his pain doctor, Dr. Brent Stewart, sometime in 2014 due to pain that Plaintiff described as "unbearable".  He testified that he has seen pain management doctors since his surgery in 2008.  In addition to Dr. Stewart, he recently began seeing Dr. Muhammad for mental health treatment.  His pain medication includes morphine sulfate, Dilaudid, muscle relaxers, and something for carpal tunnel syndrome.  Plaintiff testified that the medications lose their effectiveness and he needs stronger and stronger dosages.   He was offered spinal cord stimulation as a treatment but didn't want to have a device placed in his body.  R. 71-73.

Plaintiff described his pain as both sharp and dull.  His low back pain is worse than his neck pain.  Past treatments that failed included trigger point injections, IV drips, and radiofrequency ablation.  He has not been

sent for physical therapy.  A neurologist, Dr. Stevenson, recommended that spinal cord stimulation, but Plaintiff testified that a psychologist told him he was not a good candidate for the treatment.  R. 75-77.

Plaintiff began seeing Dr. Muhammad a couple of weeks before the hearing.  Dr. Muhammad prescribed medication for anxiety and depression. R. 73, 78.  Prior to seeing Dr. Muhammad, Plaintiff last saw a mental health professional four years previously in Las Vegas, when he was treated for bipolar disorder.  R. 78.

Plaintiff lives in a home with his wife.  Plaintiff is sometimes able to wash dishes and do laundry.  His wife does most of the housework. Plaintiff is unable to do much because of back pain.  He testified that he sometimes has to crawl to the bathroom in the morning due to pain.  R. 79-81.  He does not engage in social activities.  He and his wife sometimes go to the botanical gardens, with Plaintiff in a wheelchair.  They sometimes go out for a meal or a drink.  Plaintiff's activities include listening to the radio, watching television, and playing with his cat.  Plaintiff testified that he cannot walk more than 15 or 20 steps and cannot stand for more than 30 seconds.  He testified that he has had a prescription for a walker for seven years, and that he has used a wheelchair for the past seven months "[t]hat's been Dr. Stewart."  He can sit for 30 or 45 minutes before changing

position.  R. 82-83.  Plaintiff denied knowing that he had received disability benefits based on his mental impairment; he believed that he was disabled due to his physical maladies.  R. 85.

The VE testified that Plaintiff's past relevant work was as an operating engineer, a skilled, medium job pursuant to the DOT classification.  Assuming a person with Plaintiff's age, education, experience, and RFC for light work with certain postural and environmental limitations identified by Dr. Kwock, Plaintiff could not return to his past work.  The VE testified that other jobs are available in significant numbers in the national and local economy at the light and sedentary level, including cashier II, marker, document preparer, and addresser.  Each of those jobs would have a sit-stand option.  R. 88-91.

## IV.  Discussion

Plaintiff argues that the ALJ's finding of medical improvement is not supported by substantial evidence.  ECF No. 12 at 19.  Plaintiff contends that the medical evidence establishes that there is "no change" in Plaintiff's condition, and his complaints of chronic pain have remained consistent.  He asserts that not only is there no record of clinical improvement in his mental health, but that his condition in 2008, at the time of the CPD, was a combination of chronic pain and chronic mental illness.  Plaintiff contends

that the evidence shows he has "at all times suffered from chronic pain in combination with severe mental health problems," and therefore the Commissioner cannot show that he has experienced substantial medical improvement. *Id.* at 36.

The fundamental problem with Plaintiff's argument is that he points to no evidence in the record that supports his claim that the disability finding in the CPD was based on his combined mental and physical impairments. Rather, contrary to Plaintiff's assertion, the record reflects that the disability finding in the CPD was based wholly on mental impairments.

The June 22, 2009, disability determination and transmittal form state that Plaintiff's disability began on February 18, 2008, based on a primary disability diagnosis of affective and mood disorders and a secondary diagnosis of personality disorders. R. 93. The determination was based on Dr. Roldan's PRT form and RFC assessment, summarized above, in which she assessed marked limitations in four domains of mental functioning. Dr. Roldan's RFC restricted Plaintiff to simple, routine tasks and provided that he could not accept instructions from supervisors or remain socially appropriate with coworkers or the general public. R. 521-23.

Further undermining Plaintiff's argument, a March 2009 physical RFC reflects that Plaintiff could perform a broad range of medium work with little

physical restriction.  R. 506-13.  Thus, it is apparent that the CPD was

based solely on Plaintiff's mental impairments, as the ALJ found and as

Plaintiff's counsel conceded during the hearing.  *See* R. 26, 61.

Substantial evidence also supports the ALJ's determination that

Plaintiff experienced medical improvement in his mental impairments as of

December 12, 2014.  Medical improvement is defined as any decrease in

the medical severity of the claimant's impairments based on changes in the

symptoms, signs, and/or laboratory findings associated with those

impairments. *See* 20 C.F.R. § 404.1594(b)(1), (c)(1). When the record

reflects that a claimant has experienced medical improvement, the ALJ

must determine if the medical improvement relates to the claimant's ability

to work. *See* 20 C.F.R. § 404.1594(b)(3), (f)(4). Generally, medical

improvement relates to a claimant's ability to work if the claimant has had a

decrease in the severity of his impairments and this decrease impacts his

RFC.  *See* 20 C.F.R. § 404.1594(b)(3), (c)(2); *Kales v. Comm'r of Soc.

Sec.*, 719F. App'x 893, 2017 WL 6506347, *1 (11th Cir. Dec. 20, 2017);

*Gombash v. Comm'r, Soc. Sec. Admin.*, 566 F. App'x 857, 859 (11th Cir.

2014); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir.1984). If medical

improvement is established and is related to the claimant's ability to work,

the ALJ will decide if the claimant's current impairments are severe.  *See*

20 C.F.R. § 404.1594(f)(6). If the claimant has a severe impairment, the ALJ then will assess the claimant's current RFC and determine if the claimant can do his past relevant work or other work. *See* 20 C.F.R. § 404.1594(f)(7), (8).

In this case, the ALJ pointed out that since February 2008, Plaintiff had not received treatment for his mental health issues, aside from occasional Valium prescriptions for anxiety, issued by his family practitioner and pain management treatment provider.  R. 27.  Notably, as the ALJ pointed out, Plaintiff did not attend counseling, did not receive specialized treatment, and had not been hospitalized in connection with his mental impairments.  As summarized above, clinic notes from 2013 and 2014, from the Southern Nevada Pain Center and from family physician Alpa Desai, relating to Plaintiff's mental condition document normal findings, and the ALJ noted such findings as support for his decision.  The ALJ observed that there are no treatment notes from any mental health provider documenting disabling mental impairments.  R. 26-27.

The ALJ also relied on the assessment of the state agency psychologist, Dr. Hodes, who determined that Plaintiff could sustain concentration and pace for the performance of simple and routine tasks, perform satisfactorily with limited social contacts and responsibilities, and

respond appropriately to changes in a routine work setting.  R. 32, 607.

The ALJ pointed to Plaintiff's hearing testimony, confirming that he

maintained good family relationships, went on public outings, and was able

to interact with others.  R. 28-29, 32-33.

Lastly, the ALJ properly weighed and discussed the relevant opinion

evidence in concluding that Plaintiff experienced medical improvement.

The ALJ afforded little weight to Dr. Humphrey's statement that Plaintiff

described symptoms consistent with bipolar disorder and somatic symptom

disorder, explaining that it was unsupported by Plaintiff's limited record of

mental health treatment, records from other treatment sources, and

Plaintiff's own testimony that he was unaware that his disability was based

on mental impairments.  R. 27, 32.

The ALJ also afforded little weight to Dr. Mohammed's note stating

that since August 2016 Plaintiff was being treated for Major Depressive

Disorder and generalized anxiety disorder.  The ALJ determined that the

statement is insufficient to establish a diagnosis because it is unsupported

by any progress notes or examination findings.  R. 28.

Based on the record evidence, the ALJ properly concluded that

Plaintiff's medical improvement related to his ability to work.  The

improvement resulted in an increase in his RFC since he no longer

exhibited the marked limitations in social functioning that previously
impaired his ability to take direction from a supervisor or interact
appropriately with coworkers and the general public.  R. 26-27, 35.

The ALJ then proceeded to the next step of the evaluation by
considering Plaintiff's current mental and physical condition.  Apart from
conclusionally alleging that he is disabled due to a combination of chronic
pain and chronic severe mental impairments, Plaintiff points to nothing in
the record that undermines the ALJ's RFC finding based on his current
impairments.  *See* R. 12.  The ALJ thoroughly discussed the relevant
evidence relating to Plaintiff's musculoskeletal impairments.  As
summarized above, the records document that Plaintiff received
conservative treatment with medication for the mild degenerative findings,
that his condition following his surgery remained stable, and that physical
examination findings showed full muscle strength, normal balance, and
coordination.  R. 30-31.  The ALJ pointed to the opinion evidence, which
consistently found that Plaintiff could perform a modified range of light
work.  R. 33-34.  The ALJ concluded that while Plaintiff's conditions, singly
or in combination, may cause some functional limitations, the evidence
does not support limitations at the level of severity claimed by Plaintiff, and
the RFC adequately accounted for the impairments and functional impacts

documented in the record.  R. 35.  The ALJ accounted for Plaintiff's complaints of chronic pain by limiting him to unskilled work.  R. 27.

In sum, on this record the Court concludes that Plaintiff has failed to meet his burden of establishing that he continued to be disabled as of December 12, 2014.  The ALJ's determinations that Plaintiff's mental impairments improved and no longer resulted in functional limitations, and that Plaintiff retains the RFC for a modified range of light work, are supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner terminating Plaintiff's benefits should be **AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida this 31st day of August 2018.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

   Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.